


FILED

Jun 25 2024, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Shorewood Forest Utilities, Inc.,

*Appellant*

v.

Robert A. Welsh and Harris Welsh & Lukmann,

*Appellees*

---

June 25, 2024

Court of Appeals Case No.
23A-PL-2342

Appeal from the Porter Superior Court

The Honorable Jeffrey W. Clymer, Judge

Trial Court Cause No.
64D02-1907-PL-6963

---

**Opinion by Judge Brown**
Judges Riley and Foley concur.

**Brown, Judge.**

[1] Shorewood Forest Utilities, Inc., ("Shorewood") appeals the trial court's entry of summary judgment in favor of attorney Robert A. Welsh and his law firm, Harris Welsh and Lukmann (collectively "the Welsh Defendants"), on Shorewood's legal malpractice claim. Shorewood contends the trial court erred in determining that the Welsh Defendants negated an element of its malpractice claim and in applying that ruling to the case in its entirety when an additional claim of breach of a fiduciary duty was unaddressed by the summary judgment motion. We affirm.

## Facts and Procedural History

[2] The undisputed material facts follow. Shorewood is a nonprofit corporation that provides sewer service to certain residents in Porter County, specifically those residing in the Shorewood Forest Subdivision and surrounding areas. Welsh ("Attorney Welsh") is an attorney practicing in Chesterton, Indiana, and is a partner in the law firm Harris Welsh and Lukmann. In October 2008, the Welsh Defendants and Shorewood entered into a legal services agreement which memorialized their attorney-client relationship. Under the terms of the representation agreement, Attorney Welsh was to provide legal services to Shorewood, including but not limited to: assisting in reviewing and drafting By-Laws, representing Shorewood in any litigation which contests Shorewood's ability to amend its By-Laws, attending meetings or conferences with the Shorewood Board of Directors or designated representatives, and assisting Shorewood with other legal matters as requested by the Shorewood Board of

Directors. Although Attorney Welsh initially attended all meetings with the Shorewood Board of Directors, the parties later developed the practice of having Attorney Welsh attend meetings and provide legal services solely on an "as requested" basis. Appellant's Appendix Volume II at 122.

[3] In 2016, Rex Properties, LLC, a property developer, approached Shorewood about accessing its sanitary sewer system for a new subdivision called Arbor Lakes South that Rex Properties was planning to develop. Shorewood's Board of Directors, which was comprised of Greg Colton and four others,[1] held a meeting on November 17, 2016, during which it approved a preliminary proposed resolution to expand Shorewood's certificate of territorial authority ("CTA") to allow for the provision of utility services to Arbor Lakes South. A meeting of Shorewood's members was held on December 15, 2016, to discuss the proposed resolution for CTA expansion. Attorney Welsh was not invited to or present at this meeting, and he was not aware of the proposed expansion at the time.

[4] Thereafter, a meeting was held in April 2017 between Shorewood's Board of Directors and a small group of attorneys who represented some Shorewood members who were opposed to the proposed expansion. At Colton's request, Attorney Welsh attended that meeting on behalf of Shorewood. During the

---

[1] The record indicates that Colton was an attorney with nineteen years of utility law experience and he had worked at the Indiana Utility Regulatory Commission as an administrative law judge for twelve years. Other board members included a professional engineer and former Director of Utilities for the City of Fort Wayne, as well as a licensed engineer with thirty-five years of experience in the utility business.

meeting, the opposing members expressed concerns regarding Shorewood's capacity to handle the proposed service expansion as well as the procedure followed and the information provided to members who had recently been asked to vote in a referendum conducted to determine if a majority of the members approved of the proposed expansion. The opposing members requested that the Board of Directors delay counting the referendum votes for thirty days and threatened to initiate litigation if the Board of Directors did not comply with the request. The Board of Directors did not agree with the delay, the votes from the referendum were tallied, and the expansion was approved. As a result, in May 2017, the opposing members filed a class action lawsuit to obtain an injunction against Shorewood from proceeding with the expansion.

[5] On July 20, 2017, while the class action was still pending, the Shorewood Board of Directors met and signed an agreement (the "Sewer Agreement") with Rex Properties which provided for Shorewood to expand into the new development and service the homes there according to certain terms, rates, and fees. The Sewer Agreement contained a provision that provided a contingency for regulatory approval of the expansion through the Indiana Utility Regulatory Commission ("IURC"), and Rex Properties was responsible to pay all costs for seeking such approval, whether the expansion was ultimately granted or denied by the IURC.[2] The Sewer Agreement was not drafted by Attorney Welsh;

[2] In its Appellant's Brief, Shorewood refers to this provision as an "escape" or "exit" clause in the contract. Appellant's Brief at 10. The Welsh Defendants refer to this provision as "a cost-free mechanism for resolving any and all expansion issues through the IURC." Appellees' Brief at 28.

however, he did review it and provide proposed revisions prior to it being approved by the membership referendum.

[6] That same date and during the same meeting, a new Board of Directors was elected, which included the election of one of the class action representatives, and the newly-elected Board immediately voted to rescind and terminate the Sewer Agreement.[3] Attorney Welsh was not asked to attend, and he was not in attendance for this meeting. Attorney Welsh did not participate in the decision by the newly-elected Board to rescind the Sewer Agreement, and no member of the newly-elected Board consulted or requested to consult with Attorney Welsh about that decision prior to or after rescinding the Sewer Agreement. The newly-elected Board suspended Attorney Welsh's services as of August 18, 2017, and Attorney Welsh tendered his resignation to Shorewood in September 2017.

[7] Following Shorewood's rescission of the Sewer Agreement, "[a] number of lawsuits ensued" including a sixteen-million-dollar claim brought by Rex Properties against Shorewood for breach of contract that was ultimately resolved by a judgment in favor of Rex Properties enforcing a settlement agreement drafted and approved by Shorewood's new counsel and Shorewood's insurance carrier. *See Shorewood Forest Utilities, Inc. v. Rex Props. LLC*, No. 22A-PL-2345, 2023 WL 5164020, at *1 (Ind. Ct. App. Aug. 11, 2023)

---

[3] Colton was the only member of the old Board of Directors that remained on the new Board and was the only member to vote against rescission of the Sewer Agreement.

(affirming trial court's judgment granting motion to enforce settlement agreement between Shorewood and Rex Properties whereby Shorewood's insurance carrier would pay Rex Properties $950,000; Shorewood itself would pay no money to Rex Properties; and, in exchange Shorewood and Rex Properties would dismiss all claims in the instant cause with prejudice"), *trans. denied*.

[8] On July 19, 2019, Shorewood filed a complaint against the Welsh Defendants, and an amended complaint on December 23, 2019. The nineteen-page, seventy-seven-paragraph complaint contained a general statement alleging claims for breach of fiduciary duty, professional negligence, and "other misconduct" regarding Attorney Welsh's legal representation of Shorewood. Appellant's Appendix Volume II at 43. After extensive discovery had taken place, on June 15, 2023, the Welsh Defendants filed a motion for summary judgment on Shorewood's claims, which they argued all "constitute claims for legal malpractice." *Id.* at 30. They designated numerous affidavits and deposition testimony in support of summary judgment. Shorewood responded with its designation of evidence in opposition to summary judgment.

[9] The trial court held a summary judgment hearing on August 10, 2023. Prior to and during the hearing, the Welsh Defendants moved to strike newly-elected Board member Tom Szefc's affidavit designated by Shorewood to the extent that it directly conflicted with his prior sworn deposition testimony, but the matter was never ruled on by the trial court. Following the hearing, on September 5, 2023, the trial court entered its order granting summary judgment

in favor of the Welsh Defendants on Shorewood's "legal malpractice claim." *Id*. at 15. Specifically, the trial court concluded that the Welsh Defendants had negated multiple elements of Shorewood's claim and that no genuine issues of material fact remained for trial.

## Discussion

[10] Shorewood contends the trial court erred in entering summary judgment on its legal malpractice claim and in applying that ruling to the case in its entirety because the Welsh Defendants did not address Shorewood's separate breach of fiduciary duty claim in their summary judgment motion. We begin by observing that the party moving for summary judgment bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id*. The Indiana Supreme Court has explained,

> To obtain summary judgment [in Indiana], a moving party must affirmatively dispel all determinative genuine issues of material fact. It is not enough to cite the absence of evidence and claim that the non-moving party is thereby unable to prove an element of its case. Rather, the moving party must demonstrate that the undisputed facts conclusively establish the absence of a required element of the non-moving party's case.

*Id.* at 676. "[W]hile federal practice permits the moving party to merely show that the party carrying the burden of proof lacks evidence on a necessary element, we impose a more onerous burden: to affirmatively 'negate an opponent's claim.'" *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (quoting *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)).

[11]     Appellate courts review a trial court's summary judgment ruling de novo. *Griffin v. Menard, Inc.*, 175 N.E.3d 811, 812 (Ind. 2021). Any doubts as to any facts or inferences to be drawn therefrom must be resolved in the non-moving party's favor. *Id.* at 813. We are not bound by the trial court's findings of fact and conclusions thereon, but they aid our review by providing the reasons for the trial court's decision. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). The party that lost in the trial court bears the burden of persuading us that the trial court erred. *Hughley*, 15 N.E.3d at 1003.

## A. *Legal Malpractice Claim*

[12]     The elements of an action for legal malpractice include: (1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff. *Reiswerg v. Statom*, 926 N.E.2d 26, 30 (Ind. 2010). A defendant is entitled to summary judgment when the undisputed material facts negate at least one element of the plaintiff's malpractice claim. *Clary v. Lite Machs. Corp.*, 850 N.E.2d 423, 432 (Ind. Ct. App. 2006), *trans. denied*.

[13] The Welsh Defendants contend, and the trial court agreed, that their designated evidence negated the breach of duty, proximate cause, and damages elements of Shorewood's legal malpractice claim. We find the element of proximate cause dispositive here. "To establish causation and the extent of harm in a legal malpractice case, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence." *Beal v. Blinn*, 9 N.E.3d 694, 700 (Ind. Ct. App. 2014), *trans. denied*. In other words, the client must prove the lawyer's negligence proximately caused its injury. *Roumbos v. Samuel G. Vazanellis & Thiros & Stracci, PC*, 95 N.E.3d 63, 65 (Ind. 2018). This proof generally requires a trial within a trial. *Id.* Proximate cause is primarily a question of fact for the jury, but it can be decided as a matter of law if the relevant facts are undisputed and lead to only a single inference or conclusion. *Drendall L. Off., P.C. v. Mundia*, 136 N.E.3d 293, 305 (Ind. Ct. App. 2019), *trans. denied*. The Welsh Defendants, as summary judgment movants, had the burden to show that Attorney Welsh's alleged negligence was not the proximate cause of any damages suffered by Shorewood.

[14] We agree with the trial court that Shorewood's legal malpractice claim "arises out of the creation and termination of" the Sewer Agreement between Shorewood and Rex Properties. Appellant's Appendix Volume II at 15. Specifically, Shorewood claims that, but for Attorney Welsh's alleged failure to exercise ordinary skill and knowledge in representing Shorewood, namely his "omi[ssion] [of] important information" regarding "capacity concerns" and the

exit clause in the Sewer Agreement, Shorewood would not have rescinded the Sewer Agreement and therefore would not have "incurred substantial damages." Appellant's Brief at 11, 28.[4]

[15] To negate the element of proximate cause, the Welsh Defendants designated, among other evidence, the affidavit of a legal expert, attorney David Hollenbeck. As noted by Hollenbeck, it is undisputed that Attorney Welsh was not made aware of the decision to terminate the Sewer Agreement or asked to provide a legal opinion on that decision either prior to or immediately after that decision was made by the newly elected Board. Based upon those, and other undisputed facts, Hollenbeck averred that there was "no action or inaction on the part of [the Welsh Defendants] which is the proximate cause of or contributed to any damage" to Shorewood. Appellant's Appendix Volume II at 176. Hollenback stated that the designated evidence showed the Welsh Defendants were "not aware of the new Board's intentions, [were] not asked to and did not provide any advice to [Shorewood] with regard to rescission and termination of the [Sewer Agreement]; therefore, it is my opinion the proximate cause of any adverse consequence of the rescission is not the result of any action or inaction of [the Welsh Defendants]." *Id.* at 177. The evidence designated by the Welsh Defendants coupled with Hollenbeck's testimony

---

[4] Shorewood claims its damages include, but are not limited to, "increased annual insurance rates, escalated costs for urgent improvements to the sewage treatment tanks, and additional costs related to retaining key [Shorewood] employees under increased scrutiny due to the lawsuits incurred." Appellant's Brief at 11 (citing Appellant's Appendix Volume II at 239-240).

constitute a prima facie showing negating the proximate cause element of Shorewood's legal malpractice claim.

[16] In response, Shorewood failed to come forward with evidence establishing the existence of a genuine issue of material fact on the element of proximate cause. Indeed, Shorewood's only response on the issue of proximate cause is to point to new board member Tom Szefc's designated affidavit in which he averred that he would not have voted to rescind the Sewer Agreement had he been advised that the agreement had to be approved by the IURC, and that he would have voted differently if he had been informed of the capacity issues. Shorewood asserts that Szefc's affidavit "unequivocally confirms that Attorney Welsh's failure to inform the Board of the IURC clause in the Sanitary Sewer Agreement led to both his vote to rescind the Agreement, and his failure to insist upon sending the matter to the IURC" and therefore Attorney Welsh's "failure to advise the New Board was the direct and proximate cause of the damages associated with the failure to mitigate the rescission of the contract by sending the matter to the IURC." Appellant's Brief at 28-29. Shorewood further claims that Szefc's affidavit "firmly establishes the case-within-a-case: whether or not the outcomes would have been different absent the attorney's conduct." *Id*.

[17] However, as emphasized by the Welsh Defendants, and as argued in their motion to strike, Szefc's affidavit conflicts with his prior deposition testimony given in this case and designated by the Welsh Defendants. In his deposition, Szefc testified that he knew about the capacity issues and the exit clause in the

Sewer Agreement and that he had personally advocated to the newly elected Board that, rather than rescind the Sewer Agreement, the Board should first submit the agreement to the IURC. This testimony directly conflicts with the affidavit statements upon which Shorewood relies to create a genuine issue of material fact on the proximate cause issue.

[18] It has long been the law in Indiana and many other jurisdictions that "contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant." *Gaboury v. Ireland Rd. Grace Brethren, Inc.*, 446 N.E.2d 1310, 1314 (Ind.1983) (citation omitted), *reh'g denied*. In adopting this rule, the *Gaboury* Court noted that "'[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Id*. (citation omitted). Accordingly, "[w]here deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Crawfordsville Square, LLC. v. Monroe Guar. Ins. Co.*, 906 N.E.2d 934, 939 (Ind. Ct. App. 2009) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)), *trans denied*. Szefc's deposition testimony is not mistaken and we disregard his conflicting affidavit statements as they relate to proximate cause.

The Welsh Defendants' undisputed designated evidence indicates that nothing Attorney Welsh did or did not do led to the rescission of the Sewer Agreement as Shorewood did not ask for Attorney Welsh's legal advice prior to or after rescinding the Sewer Agreement. Thus, we conclude that the designated evidence establishes as a matter of law that any damages suffered by Shorewood as a result of its decision to terminate the Sewer Agreement were not proximately caused by any act or omission of Attorney Welsh. In sum, Attorney Welsh cannot be liable for not doing something that his client did not request of him or not giving advice that he was not asked for.[5] As there is no proximate cause between Attorney Welsh's alleged errors and Shorewood's alleged loss, we affirm the trial court's entry of summary judgment in favor of the Welsh Defendants on Shorewood's legal malpractice claim. *See Gates v. O'Connor*, 111 N.E.3d 215, 231 (Ind. Ct. App. 2018) (affirming trial court's entry of summary judgment on legal malpractice claim because designated evidence negated element of proximate cause), *trans. denied*.

## B. *Breach of Fiduciary Duty Claim*

Shorewood maintains that "[c]omplete summary judgment is impermissible" due to the Welsh Defendants' failure "to include an essential piece" of Shorewood's complaint in their summary judgment motion. Appellant's Brief

---

[5] Shorewood suggests that "[i]t can be inferred that Attorney Welsh knew that the [new] Board would act swiftly to rescind the Sanitary Sewer Agreement, and yet he did not take any steps to forewarn them as to the consequences of such an action or to discuss how to mitigate the harm afterwards." Appellant's Brief at 29-30. This is not a reasonable inference.

at 31. In its complaint, Shorewood also asserted a claim for breach of fiduciary duty against Attorney Welsh. A claim for breach of fiduciary duty generally requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. *West v. J. Greg Allen Builder, Inc.*, 92 N.E.3d 634, 643 (Ind. Ct. App. 2017), *trans. denied*. Shorewood argues that the Welsh Defendants neither specifically mentioned nor specifically negated one of the elements of its claim for breach of fiduciary duty in their motion for summary judgment, and therefore the trial court erred in disposing of this case in its entirety by granting summary judgment in favor of the Welsh Defendants.[6]

[21] The record reveals that the Welsh Defendants moved for summary judgment "on all claims alleged in the Complaint in this cause[.]" Appellant's Appendix Volume II at 20. They further emphasized in their summary judgment brief that all of Shorewood's claims, which included Shorewood's breach of fiduciary duty claim, "are without merit" and "constitute claims for legal malpractice." *Id*. at 21, 30. The Welsh Defendants framed their argument by explaining that all of Shorewood's claims "arise from" alleged violations of the parties' legal services agreement "with regard to the Sewer Agreement; and therefore constitute claims for legal malpractice. As a result, the Court need only consider the elements for a legal malpractice claim to determine if the [Welsh

---

[6] It is apparent from the chronological case summary that the trial court considered its summary judgment ruling to apply to the entirety of Shorewood's case against the Welsh Defendants. *See* Appellant's Appendix Volume II at 14 (entries canceling final pretrial conference and scheduled jury trial).

Defendants] are entitled to Summary Judgment on [Shorewood's] Complaint." *Id*. at 30-31. As noted by the Welsh Defendants, Shorewood did not respond or object to this framing of the claims as encompassed by the legal malpractice claim in its brief or designation of evidence. Indeed, Shorewood has not identified a basis for a fiduciary relationship aside from the attorney-client relationship as memorialized by the parties' legal services agreement. Accordingly, we view Shorewood's breach of fiduciary duty claim as merely derivative of its legal malpractice claim. *See, e.g.*, *Krieg DeVault LLP v. WGT V, LLC*, 206 N.E.3d 1171, 1181 (Ind. Ct. App. 2023) (holding that because law firm did not demonstrate summary judgment was appropriate on the underlying legal malpractice claim, it could not be entitled to summary judgment on derivative breach of fiduciary duty claim), *trans. denied*.

[22] As we concluded above, the Welsh Defendants designated evidence establishing as a matter of law that they were entitled to summary judgment on Shorewood's legal malpractice claim. As the claims were framed here, this included Shorewood's claim regarding breach of fiduciary duty stemming from the same underlying attorney-client relationship and facts. Under the circumstances, we cannot say that the trial court erred in disposing of this case in its entirety by granting summary judgment in favor of the Welsh Defendants.

[23] For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of the Welsh Defendants.

Affirmed.

Riley, J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

Scott A. Seville
Robert J. Fox
Robbins and Seville, LLC
Crown Point, Indiana


ATTORNEYS FOR APPELLEES

Crystal G. Rowe
Jacob W. Zigenfus
Kightlinger & Gray, LLP
New Albany, Indiana

Michael E. Brown
Kightlinger & Gray, LLP
Indianapolis, Indiana

Connor H. Nolan
Harris Welsh & Lukmann
Chesterton, Indiana